State, ex rel. Filbert, v. Schroeder.

STATE OF NEBRASKA, EX REL. JAMES B. FILBERT, V. EMMA SCHROEDER ET AL.

FILED SEPTEMBER 20, 1893. No. 6268.

Parent and Child: CUSTODY OF INFANTS. When the infant daughters of the relator (their father) are in the custody of the step-mother of the deceased mother of such infants, which step-mother and her husband have demonstrated that they are able, willing, and intend to, and have so far provided for the said infants in all respects as they should for their own grandchildren, and it clearly appears that it is for the best interest of said infants that they remain where they now are, such infants will not be delivered to the custody of their father, who has no place, means, or assistance suitably to providing for them.

ERROR from the district court of Cass county. Tried below before CHAPMAN, J.

A. N. Sullivan, for plaintiff in error.

Byron Clark and B. S. Ramsey, contra.

RYAN, C.

The relator began this action in the district court of Cass county, Nebraska, for the possession of his two children, Florence A. Filbert, aged seven years, and Angela G. Filbert, aged four years, of whom it was alleged their step-grandmother had unlawful possession. The petition fur-

ther stated that the relator was able and willing to maintain and care for said children; notwithstanding which facts, the step-grandmother of said children, Emma Schroeder, and her husband, Fred Schroeder, refused to allow the relator to take charge of said children, or even to visit them.

The answer admitted the relationship between the parties averred in the petition, as well as the description of the children, and the alleged refusal to allow the relator to visit them. There was a denial of every other allegation of the petition. The answer alleged that said Emma Schroeder was the step-mother of the mother of said infant children; that said Emma Schroeder was married to the father of the mother of said minors a great number of years before the death of Dorothea C. Filbert, the mother of said minors, and that said Emma Schroeder had raised said Dorothea, and had always since her early childhood sustained towards her the relation of a mother until said Dorothea married the relator. The answer, in effect, further alleged that at the time of the marriage of said Dorothea to the relator, the said relator was possessed of nothing but an inordinate ambition to secure control of, and appropriate to his own use, the patrimony of said Dorothea, of a considerable alleged value; that he had obtained possession and squandered a large part of the inheritance of said Dorothea; had deprived her of the control of the above named infants and secreted them, thereafter informing the said Dorothea that unless she gave the relator possession and control of her individual property she should never see said children again, by which means the relator obtained possession and control of other property of the said Dorothea. Upon information the answer further charged that the relator afterwards abandoned his wife and children for a long time immediately preceding the death of said Dorothea, which event, the answer admits, occurred on July 17, 1891, as stated in the petition. The answer further stated that Emma Schroeder and Fred Schroeder, her husband,

had no children; that their family consisted of said minor children and themselves, and that the relator was not permitted to see said children for the reason that the elder stood in great fear of her father. Further, the answer alleged that Emma Schroeder had been appointed guardian of said children by appropriate proceedings in the county court of Cass county, Nebraska, and had duly qualified as such.

By an amendment to the answer it was alleged that at the time of the decease of Dorothea C. Filbert she entrusted the care, custody, and control of her children, the above mentioned infants, to Mrs. Emma Dewey, a married sister of Dorothea, who, by reason of ill health and the necessity of caring for her own family, was unable to give to said minor children the care and attention which she believed they should receive, and, therefore, entrusted them to the respondents, Emma Schroeder and Fred Schroeder. This amendment further charged that the relator, by reason of being a single man without a home or means of support, and on account of his general habits, was not a fit person to have the care and nurture of his daughters; that the interest of the children demanded that the respondents have the care and custody of them. In closing this amendment, the respondents alleged that they were ready to adopt said children with full property rights of inheritance.

Upon the trial the following findings were made, omitting the formal introductory parts:

" First—That the relator, James B. Filbert, is a man of exemplary character and a fit person to have the custody of his infant children.

" Second—That at the time of the pretended appointment of the respondent, Emma Schroeder, as guardian of said infants, the said infants had neither domicile nor property of any kind in Cass county, and that said appointment is no defense to the relator's action for the possession and custody of said infants, his children.

"Third—The court further finds that the relator has failed to show to the satisfaction of the court that he has at present a suitable home for said infant children.

"Fourth—That the respondents have a suitable home for said children, and that it is for the best interests of said children that they be left with said respondents for the present, until the relator can at any time satisfy the court that he has a suitable home.

"Fifth—The court further finds that the relator has a right to visit his children at all suitable times, and orders and directs that respondents permit him so to do; that unless this order is complied with, relator may make a further showing of the fact to the court, when a further order may be entered in this cause.

"It is therefore considered by the court that the relator's petition be refused."

A motion for a new trial having been overruled, the alleged errors are presented for review in this court. In some slight respects there might be room for disagreement with the conclusions of the district court. As to such propositions as are essential to a determination of this proceeding, there is, however, no room for argument—the evidence fully sustains them. It is found that James B. Filbert has failed to show that he has at present a suitable home for his infant children, and that, on the other hand, the respondents have such a home, and that it is for their best interests that they be left with the respondents until their father can satisfy the court that he has suitably provided for them. It is unnecessary to review the proofs, as they fully sustain these conclusions, and we shall, therefore, confine our attention to the legal results which should follow upon these findings.

In the case of *Sturtevant v. State, ex rel. Havens*, 15 Neb., 462, REESE, J., delivering the opinion of this court, said : "Were the question of the *right* of the father the only question to be considered, we should perhaps coincide

with the conclusions of law as stated by the district court. It is true this legal right was at one time, in the early history of our jurisprudence, fully recognized both by the courts of England and of this country; and it is in part made the law of this state by section 6, chapter 34, of the Compiled Statutes, which provides that 'the father of the minor, if living, and in case of his decease, the mother while she remains unmarried, being themselves respectively competent to transact their own business, and not otherwise unsuitable, shall be entitled to the custody of the person of the minor, and to care for his education.' Were this section alone to determine the rights of the parties, and were the rule here laid down an inflexible one, it would not only decide this case in favor of the defendant in error, but in a proper case it would deprive the mother of the control or education of her children upon the decease of the father and her remarriage, without any reference to the best interests of the children, and in that case it might be conceded that she was in every other respect worthy and qualified, that she had ample means and was greatly attached to her children, and her remarriage might place them in a better condition, morally, socially and financially, and yet this section of the statute, if strictly followed by the courts, would override every consideration of the welfare of her children, take them from her, and place them in the hands of strangers. Such could not have been the intention of the legislature which passed this section of the law. It is true that this section is declarative of the law in its general sense, but we cannot agree with the defendant's counsel and decide the cause upon the rule there laid down, unaided by recent judicial decisions or the circumstances of the case. But rather taking our statute as a general guide, we will look to the particular necessities of the case and give our special attention to the best interests of the child about whom this unfortunate controversy has arisen."

After the citation of several authorities in support of

the general proposition laid down, Judge REESE, on page 464, employed the following language: "From a careful examination of the authorities at our command, we think the prevailing rule in this country may be briefly stated to be, that in controversies similar to this, especially where the infant is of the tender age of the one contended for, the court will consider only the best interest of the child, and make such order for its custody as will be for its welfare, without any reference to the wishes of the parties."

Further on he continued thus: "It is no doubt true that the defendant in error is greatly attached to this child, and that the facts as found by the court show that he is in every respect a suitable person to have its care and custody, but when we consider his age and want of experience, we are driven to the conclusion that *personally* he could not care for the wants of a child so young and helpless. True, he has means and has employed a suitable nurse, yet, so far as we are informed, this nurse is a stranger to the child, and of course does not feel that personal interest in its welfare as would be felt by a near relative."

In *Giles v. Giles*, 30 Neb., 624, the rule laid down in *Sturtevant v. State, ex rel. Havens*, was considered and approved, and without doubt is now the settled law of this state. After the quotations above made, it is unnecessary to amplify upon the facts as found by the court. The conclusion which must result from these findings, under the decisions above cited, is unavoidable. The judgment of the district court is therefore, in all things,

AFFIRMED.

THE other commissioners concur.