IN RE APPLICATION OF ILSE REED. ILSE REED, APPELLANT,
v. LESLIE W. REED ET AL., APPELLEES.

43 N. W. 2d 161

Filed June 15, 1950. No. 32761.

*James I. Shamberg* and *Joseph H. Glass*, for appellant.

*Davis & Vogeltanz*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is a habeas corpus action brought by the petitioner in the district court for Sherman County to obtain the custody of a minor daughter from the respondents, the child's father and paternal grandparents. The basis for her cause is that the minor child is unlawfully and forcibly detained by the respondents in violation of a decree of the district court for Wyandotte County, Kansas. The petitioner was granted a decree of divorce from her husband Leslie W. Reed on her answer and cross-petition to a supplemental petition filed by him in the district court for Wyandotte County, Kansas. The decree found the petitioner to be a fit and proper person to have the custody of the minor child. The husband, represented by counsel who appeared before the district court for Wyandotte County, Kansas, orally objected to the jurisdiction of the court over the custody of the child. No evidence was offered in the husband's behalf. Decree was rendered as heretofore stated.

The respondents' defense to the instant action may be summarized as follows: That the decree of divorce awarding petitioner the custody of the minor child involved in this proceeding was void for want of jurisdiction over the child; that the best interests and welfare of the child required the custody of the child to be awarded to the respondent father or one or both of the other respondents; and that the relief prayed for by the petitioner should be denied.

Hearing was had before the district court. Thereafter the trial judge rendered a decree finding generally in

favor of the respondents and against the petitioner, awarded the custody of the minor child to its father, Leslie W. Reed, and dismissed petitioner's application for the writ. Upon the overruling of the motion for new trial, the petitioner appeals.

The petitioner, as appellant in this court, assigns as error that the decree of the district court is contrary to law and to the evidence. In support of this contention the appellant objected to and moved to strike all testimony and evidence relating to the fitness and suitability of the appellant to have the care, control, and custody of the minor child, prior to the judgment and divorce decree in the district court for Wyandotte County, Kansas, rendered June 21, 1948, awarding the custody of the child to the appellant, on the grounds of res adjudicata, and that the decree so awarded by the district court for Wyandotte County, Kansas, should be given full faith and credit as provided for by Article IV, section 1, of the Constitution of the United States.

Apparently the appellant relies on the following authorities which, for convenience, we are numbering separately:

1. A decree awarding custody of a child, or modifying a prior decree in this respect, will be considered binding and recognizable in another state even though the child was physically outside of the state. See, Annotation in 9 A. L. R. 2d 454, cases cited under part V, section 11, Jurisdiction of foreign court (validity of prior foreign award); Wear v. Wear, 130 Kan. 205, 285 P. 606, 72 A. L. R. 425.

2. Where the custody of a child has been awarded to one parent by a court having jurisdiction so to do, the right of this parent will be recognized by other states. The facts upon which the award was based have become res adjudicata, and cannot be reexamined in the second state. This rule affords exactly the same recognition to a decree of a foreign court that would be afforded to an adjudication within the forum, for it is well established

that a decree awarding custody may be modified or changed by the court making it as circumstances may warrant. See, Kruse v. Kruse, 150 Kan. 946, 96 P. 2d 849; Burrowes v. Burrowes, 78 F. 2d 742; Wear v. Wear, *supra;* 25 Am. Jur., Habeas Corpus, § 82, p. 206. This estoppel extends only to conditions which existed at the time of the original decree. The second court may examine any facts which have occurred since the original decree which throw light on the fitness of the parents to have the custody of the child. Kruse v. Kruse, *supra;* Wear v. Wear, *supra;* Annotation in 9 A. L. R. 2d 454.

3. The changed conditions must be substantial, and only a change in circumstances and conditions materially affecting the existing welfare of the minor, occurring since the former adjudication, may properly become the subject of inquiry and the basis of a change in the award of the minor's custody. In addition to the authorities above cited, see: Evens v. Keller, 35 N. M. 659, 6 P. 2d 200; Albright v. Albright, 45 N. M. 302, 115 P. 2d 59; In re Alderman, 157 N. C. 507, 73 S. E. 126, 39 L. R. A. N. S. 988; Kenner v. Kenner, 139 Tenn. 211, 201 S. W. 779, L. R. A. 1918E 587; Milner v. Gatlin, 139 Ga. 109, 76 S. E. 860.

4. As conventionally stated, the rule has been that the most the full faith and credit clause can require is that the prior ruling shall be deemed conclusive in the absence of an asserted change in circumstances. See, Yarborough v. Yarborough, 290 U. S. 202, 54 S. Ct. 181, 189, note 19, 78 L. Ed. 269, 90 A. L. R. 924; Calkins v. Calkins, 217 Ala. 378, 115 So. 866.

In general, the writ of habeas corpus has been extended to, and may be used in, controversies regarding the custody of infants. Such proceedings are governed by considerations of expediency and equity, and should not be bound by technical rules of practice. See, 39 C. J. S., Habeas Corpus, § 41, p. 568; Hanson v. Hanson, 150 Neb. 337, 34 N. W. 2d 388.

After the court's jurisdiction has been invoked by

habeas corpus petition seeking custody of a child, the child is a ward of the court and its welfare lies in the hands of the court. See Hanson v. Hanson, *supra.*

This jurisdiction, in habeas corpus actions instituted in the courts of this state for the custody of a minor child, has for a period of more than 60 years adhered to the following rule. In Sturtevant v. State, 15 Neb. 459, 19 N. W. 617, 48 Am. R. 349, it was held: "In such a controversy for the custody of the child the order of the court should be made with a single reference to the best interests of such child." In the opinion the court said: "But rather, taking our statute as a general guide, we will look to the particular necessities of the case and give our special attention to the best interests of the child about whom this unfortunate controversy has arisen." See, also, Giles v. Giles, 30 Neb. 624, 46 N. W. 916; State ex rel. Filbert v. Schroeder, 37 Neb. 571, 56 N. W. 307; Schroeder v. State, 41 Neb. 745, 60 N. W. 89; Norval v. Zinsmaster, 57 Neb. 158, 77 N. W. 373, 73 Am. S. R. 500; State v. Porter, 78 Neb. 811, 112 N. W. 286; State ex rel. Britton v. Bryant, 95 Neb. 129, 145 N. W. 266; State ex rel. Edmisten v. Highberger, 103 Neb. 258, 170 N. W. 906; In re Application of Schwartzkopf, 149 Neb. 460, 31 N. W. 2d 294; Kaufmann v. Kaufmann, 140 Neb. 299, 299 N. W. 617; Hanson v. Hanson, *supra.*

It will be observed that in this jurisdiction, in a controversy for the custody of an infant of tender years the court will consider the best interests of the child and will make such order for its custody as will be for its welfare without reference to the wishes of the parties.

The welfare of the child is the primary consideration to which all other questions must yield, and the court must consider, not only the spiritual and temporal welfare, but the minor's further education, training, and morals of the contesting parties, or for that matter some other party to whom custody of the child might be awarded fit and suitable to best take care of the child.

With further reference to the appellant's contention that evidence relating to the fitness and suitability of the appellant to have the care, control, and custody of the minor child here involved should have been stricken upon motion made by the appellant appearing in the record, the authorities supporting the appellant's contention in such respect hold generally, in considering the question of changed circumstances since the award of custody of a child by an order or decree of another state, the court before which the changed conditions affecting the welfare of the child is in issue with respect to awarding custody may consider the evidence of events which occurred prior to the adjudication, notwithstanding that it is conclusive as regards the facts and circumstances which existed at the time of its rendition, for the reason that unless the original circumstances are before the court it cannot be told whether or not those circumstances have changed. See Sheehy v. Sheehy, 88 N. H. 223, 186 A. 1, 107 A. L. R. 635.

As heretofore stated, in cases of this nature the rule has long been firmly established in this state that in questions of custody, the primary consideration is the present and prospective welfare of the child. On this issue the field of inquiry is necessarily broad. Our courts are appealed to in the usual way by habeas corpus to interpose in respect to the custody of the child, and the matter is to be determined in accordance with the rules and policy of this state in such matters. This state is constructively a party to this proceeding and to all of like character within its jurisdiction. Where the child is within the jurisdiction of this state and is before the court in a controversy as to its custody, such as the present action, the court is required to inquire and may investigate the parents' past conduct as a guide to what may be expected in the future, and this investigation into the past is limited, not only by the date of some prior decree, but by the application of the broader general rule of remoteness.

The court in determining the custody of a child may consider the character and resources of the parents, their fitness, temperamental and otherwise, for the trust of guardianship, and the advantages which may be expected to accrue to the child in the event that the custody is given to either of them. See, Sheehy v. Sheehy, *supra,* and the afore-cited cases from this jurisdiction.

We conclude the trial court did not err in the overruling of the appellant's motion to strike the evidence touching upon the fitness and suitability of the appellant to have the care, control, and custody of the minor child before the court.

In furtherance of what we have said with regard to the custody of a minor child in a habeas corpus proceeding in this state, we deem the following authorities applicable to this appeal. As stated in Finlay v. Finlay, 240 N. Y. 429, 148 N. E. 624, 40 A. L. R. 937: "The jurisdiction of a State to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless (Woodworth v. Spring, 4 Allen, 321, 323; White v. White, 77 N. H. 26; Hanrahan v. Sears, 72 N. H. 71, 72; Matter of Hubbard, 82 N. Y. 90, 93). For this, the residence of the child suffices though the domicile be elsewhere (Matter of Hubbard, supra). But the limits of the jurisdiction are suggested by its origin. The residence of the child may not be used as a pretense for the adjudication of the status of parents whose domicile is elsewhere, nor for the definition of parental rights dependent upon status * * * Griffin v. Griffin, 95 Oreg. 78; Lanning v. Gregory, 100 Tex. 310; Blackinton v. Blackinton, 141 Mass. 432, 436; Matter of Standish, 197 App. Div. 176)." See, also, Steele v. Steele, 152 Miss. 365, 118 So. 721.

"The jurisdiction of a State to regulate the custody of infants found within its territory does not depend

upon the domicile of the child, but it arises out of the power that every sovereignty possesses as parens patriae to every child within its borders to determine its status and the custody that will best meet its needs and wants, and residence within the State suffices even though the domicile may be in another jurisdiction." The People v. Wingate, 376 Ill. 244, 33 N. E. 2d 467.

Decrees entered in divorce actions disposing of the custody of a child then outside the jurisdiction of the court where the decree is entered are generally held not to be entitled to full faith and credit in a proceeding involving the child's custody in an action in a state other than where the decree was entered. See The People v. Wingate, *supra*. See, also, Kline v. Kline, 57 Iowa 386, 10 N. W. 825, 42 Am. R. 47; Harris v. Harris, 115 N. C. 587, 20 S. E. 187, 40 Am. S. R. 471; Weber v. Redding, 200 Ind. 448, 163 N. E. 269.

The fact that custody of a minor child has been awarded in an action in another state does not prevent inquiry into the question in a proper action by a court subsequently acquiring jurisdiction of the parties. The full faith and credit clause of the Constitution of the United States does not prevent such inquiry. But this is not to say that a prior and valid order as to custody of minors is not in full faith and effect until lawfully modified or superseded in a subsequent action. See, In re Bort, 25 Kan. 308, 37 Am. R. 255; Annotations in 72 A. L. R. 441, and 116 A. L. R. 1299; Yarborough v. Yarborough, *supra*. See, also, Elliott v. Elliott, 181 Ga. 545, 182 S. E. 845; Milner v. Gatlin, *supra;* Steele v. Steele, *supra;* In re Alderman, *supra;* Griffin v. Griffin, 95 Or. 78, 187 P. 598; Seeley v. Seeley, 30 App. Cas. D. C. 191; Linch v. Harden, 26 Wyo. 47, 176 P. 156; Gilman v. Morgan, 158 Fla. 605, 29 So. 2d 372; Re Application of Ashley, 113 Or. 43, 231 P. 153; Barnes v. Lee, 128 Or. 655, 275 P. 661; White v. White, 160 Kan. 32, 159 P. 2d 461.

To give full faith and credit to the decree of the Wyan-

dotte County district court in awarding the custody of the child to its mother in the case before us would be contrary to the laws and public policy of this state where the enforcement thereof is sought. There is a further reason that full faith and credit should not be given the Kansas decree awarding the custody of the child to its mother. The best interests of the child and its future welfare under all circumstances is the vital question in the case and is superior to all other considerations where the question is raised upon a writ of habeas corpus.

We conclude that we are not bound by the decree of the Wyandotte County, Kansas, district court in awarding the custody of the minor child to its mother. The record discloses that prior to the time of the instituting of divorce proceedings in the Wyandotte County district court of Kansas, the minor child here involved was in this state under the custody and care of its father and paternal grandparents, and has since remained in the same manner, and the district court for Sherman County, under the law and public policy of this state, had jurisdiction to determine into whose custody the child would be placed in proceedings such as habeas corpus.

This brings us to a summarization of the evidence upon which the trial court based its judgment.

For convenience we will refer to the appellant as Ilse Reed, or Ilse, and to the respondent-appellee Leslie W. Reed as Leslie Reed, or Leslie.

The record discloses that the appellant was born in Berlin, Germany, November 21, 1919. She became a graduate nurse. In December of 1938, to escape living under the Hitler regime, she went to Shanghai, China, arriving in January 1939, and renounced her German citizenship at the end of 1939. Her first husband died in September 1945, of malnutrition. She was later interned by the armed forces of Japan when they took over the city, and subsequently she was liberated by the allied forces. She met Leslie W. Reed during the

holiday season of 1945-1946, when he was connected with the armed forces of the United States and stationed at Shanghai. They were married at Shanghai on March 1, 1946. They arrived in the United States May 7, 1946, and Leslie Reed was separated from the Army May 22, 1946.

Leslie is a high school graduate, and before entering the military service engaged in farming. He informed Ilse that he was a farm boy and without much financial support. After his discharge from the Army he and Ilse went to his parents' home near North Loup where they remained from about June 1, 1946, until sometime in August 1946, when they returned to Kansas City, Kansas. They resided there with Leslie's aunt until December 15, 1946, when they moved into a residence that Leslie was to help remodel for the privilege of becoming a tenant. The minor child involved in these proceedings, Joyce Aileen Reed, was born October 12, 1946, in Kansas City. Both parties were employed, and the child was left in the care of a nurse during the day. Leslie testified that he took care of the child most of the time at night.

The record discloses that the appellant had love and affection for the child on occasions when friends and company were present, and on other occasions she would lay the child down and pay no further attention to it. There is also evidence that the manner in which she fed the child was improper, and by her conduct and manner in caring for the child, the child became nervous and irritable. Ilse wanted Leslie to take the child to his parents as she wanted rest. Argument ensued between the parties and as a consequence they went to his home. This was in the latter part of October 1947. After arriving at the home of Leslie's parents, Ilse and the child stayed and Leslie returned to Kansas City to resume work and pay up some accumulated bills so he could return to North Loup where he wanted to make his home. During his absence Ilse called him

on several occasions, and on Thanksgiving Day, November 27, 1947, she returned to Kansas City, as she stated, to study for her citizenship. She left the child in the care of Leslie's parents.

Several witnesses acquainted with the respondents Oliver, Freda Mae, and Leslie Reed who had visited in their home or who had observed the child since it has resided in their home, testified that the child was calm, healthy, happy, and properly cared for. The appellant offers no evidence to the contrary, but admits that the child is well cared for in its present home.

There is also evidence with reference to the conduct of the appellant which tends to show that she is temperamentally and emotionally unsuited and unfit to have the custody of the child at this time, which we deem unnecessary to detail.

It appears from the record that the apartment Ilse occupies in Kansas City is a small efficiency apartment. She has been employed in various vocations, was employed at the time of trial, and had the prospects of employment thereafter, and under the conditions as shown by the record she would be required to continue to work. She had made arrangements to have her mother, a seamstress, leave Germany and come to this country and reside with her. The record does not show whether or not the mother had arrived at the time of the hearing in this case. Ilse also testified that she had a lady friend who had arrived from China and lived in Kansas City, who would come to her apartment, care for and cook for the child during the day, and that she would probably be required to pay the carfare for such services. She further testified that while she had not been physically able to carry on her profession as a nurse and in addition thereto was unable legally to qualify to do so, in the event of her subsequently qualifying she proposed to resume her profession of nursing. The record does not show, and is not clear, on the qualifications of the person or persons to whom the care of

the child would be committed, or the competency of such persons in that respect.

It is true, this court in divorce cases and in habeas corpus actions has recognized that a child of tender years, in the event the mother is a fit, proper, and suitable person to have the control, care, and custody of such child, will be awarded the custody. See, Bath v. Bath, 150 Neb. 591, 35 N. W. 2d 509; Feather v. Feather, 112 Neb. 315, 199 N. W. 533; Hanson v. Hanson, *supra*. There must be sufficient evidence that when the custody of a child of tender years is awarded to the mother, the mother must be able to furnish a good home. Also, if there are peculiar circumstances by virtue of which the mother is unable to furnish the child a good and suitable home, and for other reasons the custody of the child should be denied the mother, such circumstances are to be taken into consideration in awarding the custody of the child. The best interests of the child and its welfare are the dominant factors in an action such as the instant case. The only evidence in this respect is that of the appellant with reference to her fitness and suitability to have the care and custody of the child, or as to the nature of the home and the care the child would receive. The child involved in this proceeding, since a trifle more than a year old, has been in the custody of its father and paternal grandparents. The child was more than two and one-half years old at the time of the hearing, and knew no other home. The trial court had all of the evidence before it and obviously took into consideration the circumstances surrounding the custody of the child and determined that the best interests and welfare of the child required that the care, control, and custody of it be awarded to its father, Leslie W. Reed. A review of the record shows the evidence sufficient to support the decree and judgment of the trial court.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.