BARBARA SWOLEC, APPELLANT, V. SYLVESTER SWOLEC, APPELLEE.

FILED MARCH 25, 1932. No. 28145.

*G. N. Anderson* and *Wagner & Wagner,* for appellant.

*Kemp & Brower, contra.*

Heard before GOSS, C. J., ROSE, DEAN, EBERLY, DAY and PAINE, JJ.

PAINE, J.

The appellant wife filed her petition in the district court for Nance county, asking for a divorce, custody of the two children, alimony and suit money. The husband filed a cross-petition, asking for a divorce and the custody of the two boys. The court granted the wife a divorce and the custody of the two children until September, 1931, when the decree directed that the two sons be put in school in the St. Anthony's school at Cedar Rapids, Nebraska, for the school year beginning September, 1931. The court allowed the plaintiff $2,831 permanent alimony, which amount was fixed by allowing her $1,100, which she had put into the farm property from money she had received from her parents, and $1,731, being one-third of the estimated value of the accumulated property. The wife appealed from the order of the district court.

The parties are of Polish descent, and were married October 25, 1913, and at the time of their marriage the appellee's father deeded the appellee 160 acres of land, giving him one eighty outright and selling him the other eighty for $8,000, and, as a result of their joint efforts on the farm, they have paid the $8,000 for said farm, lying 13 miles east of Fullerton, and equipped it with machinery and live stock and buildings.

The husband used intoxicating liquor frequently, and the appellant claims that all of their troubles arose from his drinking. They have separated on several prior occasions, but relatives brought them together. When they separated the last time, the appellant went to Omaha and stayed three months and learned how to operate a beauty parlor, leaving the two boys, Alvin, aged 13 years, and Leonard, aged 7 years, with her parents. Upon her return she opened a beauty parlor in Fullerton with her sister, and now conducts the same.

The wife claims that whenever a quarrel would occur between the parties the husband would assault her, but there is evidence to indicate that the appellant on some occasions was able to hold up her end in such affairs, and upon several occasions neighbors came in and tried to assist in settling the difficulties. The parties are members of the Roman Catholic church, and it is charged that the mother alienated the children from their father. The district judge directed that the boys should remain away from both parents for one year, and attend the St. Anthony's Catholic school at Cedar Rapids, Nebraska, and provided that the custody of the children be delegated during said time to the authorities conducting said school, the expenses of such schooling to be paid by the father; that, after they had finished the year's schooling, the district judge would hold a hearing and enter an order as to their permanent custody. The mother, by filing a bond and appealing to this court, has thwarted this order of the district court and has kept them with her, and has sent them to the public schools in Fullerton, and in addition they have attended a catechism class conducted at the Catholic church in Fullerton each Saturday.

The wife was 17 years of age at the time she was married, and her husband was 27 years of age. She is careful of her expenditures, and no complaint is made against her moral character. However, the evidence discloses that she lacked much in self-control.

In awarding the custody of minor children, the court

looks only to the best interests of such children, and children of tender age are usually awarded the mother. *Nathan v. Nathan*, 102 Neb. 59; *Boxa v. Boxa*, 92 Neb. 78; *Feather v. Feather*, 112 Neb. 315. Other considerations being equal, it is usual to award the custody of children to the innocent spouse.

It is to be regretted that this hard-working father, running the farm of 160 acres, has neither the time nor a suitable place in which to bring up his two boys. Neither is the mother able to devote the time she should to their care when she is devoting many hours a day to running a beauty parlor, often leaving the boys on the streets after school hours; but at the present time it appears to this court that it is the lesser of two evils to permit the mother to retain the custody of these two boys until an order for their permanent care is made by the district court.

The regular attendance at school of boys of this age is of the utmost importance, and as this appeal has defeated the order of the district court that these boys attend a certain school during this entire school year, it is ordered that the judgment of the district court in that regard be set aside, and the custody of the boys is granted to the mother until June 3, 1932. The father is directed to pay to the mother the sum of $20 a month from August 4, 1931, up to June 3, 1932, for their support and care, and the father is allowed their custody for two hours each Saturday afternoon during said time.

Under the circumstances, the order entered by the district judge is hereby modified, and the district judge will hold a further hearing and make an order for the permanent custody of these two sons.

It was insisted before this court that the amount of the alimony granted to the wife lacked much of being sufficient under all the circumstances. The district judge, in determining the amount of the alimony, may have omitted from his calculations the 80 acres of land given to the appellee by his father, and considered only the 80 acres of land for which $8,000 had been paid by their joint

efforts, and from this he deducted the $1,100 that the parents of the wife gave her at the time of their marriage. The court found that the value of the entire property accumulated by their joint efforts amounted to $6,293, and deducting from this the $1,100, he awarded the wife $1,731, or one-third of the balance, making a total amount to be paid to her in cash of $2,831.

Permanent alimony is founded upon the right of the wife to such support from her husband as she would be reasonably entitled to expect, considering all of the circumstances of the parties, and this obligation continues after their legal separation. Permanent alimony was unknown at common law, and in this state is based upon section 42-318, Comp. St. 1929, which declares that the court may award "such alimony out of his estate as it shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case." It will be seen at once that, under such a liberal statute, the fixing of the amount of the alimony rests alone upon the sound discretion of the court. The first factor that should be taken into consideration is the financial circumstances of the parties, and all of the property owned by the parties should be considered and its value ascertained as of the time of the decree. Next, the income and productiveness of the property should be considered, together with the earning capacity and future prospects of the parties; the manner in which such property was acquired, whether through joint savings or by inheritance, and the contributions made by each, together with the value of the services rendered by each of the parties during their marriage. If evidence relating to the respective ages of the parties, the duration of and conduct during the marriage, their station in life, respective wants, circumstances and necessities, has been given, it should be considered, together with the health and physical condition of the parties, especially if the wife's health has been affected by the habits or conduct of the husband, also, as to whether

other relatives of the husband have legal claims for support.

With these guiding principles in mind, let us examine a few of our Nebraska cases to see how they were applied. In cases appealed to this court, the alimony has been increased in some and cut down in others, yet not according to any ascertainable standards.

As to the amount of the alimony, it has varied greatly, for in *De Vore v. De Vore,* 104 Neb. 702, *Heist v. Heist,* 48 Neb. 794, and *Pierce v. Pierce,* 96 Neb. 511, the amount awarded to the wife was approximately one-half of the value of the property.

On the other hand, in *Cochran v. Cochran,* 42 Neb. 612, and *Smith v. Smith,* 19 Neb. 706, the alimony was but one-fourth of the value of the property.

In many cases, too numerous to cite, it has been fixed at one-third of the value of the property. This was done in *Goldenstein v. Goldenstein,* 110 Neb. 788, which involved property of $25,000, and in the case of *Nathan v. Nathan,* 102 Neb. 59, where the husband admitted that his holdings were worth $155,000, an award by the district court of $35,000 was increased in this court to $50,000. In the case of *Edholm v. Edholm,* 99 Neb. 331, an award of only $25,000 was allowed on a valuation of $110,000, while in *Kimbro v. Kimbro,* 73 Neb. 171, an award of $5,500 was cut in this court to $2,500 out of property valued at $16,-700. In *Haase v. Haase,* 118 Neb. 94, an award of $1,000, out of property worth more than $16,000, was raised to $3,000 by this court. In *Tiernan v. Tiernan,* 112 Neb. 707, an award of $125 a month to the wife was set aside in this court, and she was given $40,000, payable in five annual instalments of $8,000 each, when the husband's estate amounted to over $250,000.

It must be clear, from these few illustrations, that there has never been an attempt by this court to fix any rules which would relieve the trial judge of a patient, detailed study of every fact and circumstance relating to each case as it comes on for trial.

With the above observations in mind, let us examine the record in the case at bar. The estimates as to the value of this farm land, aside from those of the litigants, ran from $62.50 an acre to $125 an acre, and the fair average of these estimates of witnesses fixed the value of the land at $88 an acre for the entire 160 acres. The debts outstanding against the property amounted at the time of the trial to $3,327, exclusive of the $1,100 contributed by the wife. Under these circumstances, this court sets aside the order for the payment of $1,731 alimony to the wife, and increases the permanent alimony to $2,500, which, with the $1,100 contributed by her, makes a total of $3,600, which shall be a lien against the property of the appellee, which amount, considering the present depression in the values of farm products and the difficulty of securing mortgages upon farms, shall be paid to the appellant at the rate of $400 each year for nine years, in payments of $200 upon June 1 and $200 upon December 1 each year, and said payments are to bear no interest if paid when due.

It is further ordered that the appellee shall pay, in addition to the costs in both courts and the attorney's fee of $250 allowed by the district court, an additional $150 for attorney's fee in this court, and that the district court, at the time of determining the permanent custody of the sons, shall make such order for their support as may be just and equitable under all the circumstances.

Judgment of the district court modified as herein set out, and affirmed as modified.

AFFIRMED AS MODIFIED.